### No. 9644.

EDWARD G. SCHLIEDER VS. L. B. MARTINEZ; S. HERNSHEIM BROS. VS. SAME; C. E. SARRAZIN & CO. VS. SAME; WM. DEMESTH VS. SAME; LEWIS SYLVESTER & CO. VS. SAME.

(CONSOLIDATED.)

#### ON THE MERITS.

FENNER, J. The various plaintiffs brought these suits against their common debtor, Martinez, accompanied by writs of attachment and sequestration, under which were seized the contents of a certain cigar store in this city, which, up to two days before the seizure, had been owned and conducted by Martinez.

John Rexach intervened, claiming ownership of the entire property by virtue of a notarial act of sale passed on November 5, 1885, two days before the seizure and on the very day when one of the notes sued on by the principal plaintiff matured. By this act Martinez proposed to transfer to Rexach " all and singular the contents and stock in trade of a certain cigar and tobacco store, established at No. 71 Camp street, together with the counters, fixtures and furniture therein contained, and all other matters and things thereto belonging, etc., as the whole is fully brought down on the inventory thereof attached to and identified with the act of sale."

The accompanying inventory was minute, with valuations attached to each item and footing up the sum of $4,040, which was fixed as the price of the sale, in payment of which the act recites that Rexach " turned over unto said vendor a certain note drawn by Martinez for the sum of $2,000, dated July 1, 1885, and payable on demand; paid in cash the sum of seventeen hundred dollars; and for the balance of said price furnished to said Martinez three certain notes dated November 5, 1885, one for $240 payable three months after date, and the two others each for the sum of $500, payable at four and five months after date" —the notes being identified with the act of sale by the paraph of the notary.

Subsequently, Benito Lloveras and Francis Esteva intervened, claiming to be holders for valuable consideration before maturity of the last mentioned notes, and to be entitled to a vendor's lien on the property seized.

Plaintiffs filed answers to these interventions, attacking the alleged title of Rexach as fraudulent and simulated, and charging fraud and collusion on the part of Lloveras & Esteva.

I.

The intervenor, Rexach, claims in argument in this Court, that inasmuch as he held under an authentic title valid upon its face and accompanied by possession, the plaintiffs were not authorized to disregard such title and possession and proceed by direct seizure, even upon allegations of simulation, but were bound to resort to a direct action *en déclaration de simulation.*

Whatever be the merits of this proposition, as applied to transfers of movable property, on which we express no opinion, we consider that intervenor has precluded himself from urging it by his proceedings in the court *a qua.* .

It will be observed that Rexach had intervened after the seizure, had set up his title and prayed " that he be decreed the true and *bona fide* owner of the property."

Plaintiffs, thus invited, joined issue as to his claim, and charged that his title was simulated and in fraud of creditors.

When the case was called for trial, before any testimony was offered, the minutes show the following proceedings : " On behalf of defendant and intervenors a motion is made to strike out from the answers which have been filed to the interventions the demand for the revocation of the act of sale made by the defendant Martinez to the intervenor Rexach, and to strike out all such pleadings, *except those that go upon the pure simulation of the contract averred.* Furthermore, they file now this demurrer to the reception of any evidence upon this branch of the case, which is in the nature of a revocatory action."

Ry this proceeding Rexach restricted his objection to the revocatory feature of plaintiff's attack on his title, recognized their right to set up its simulation, and voluntarily submitted to the court the issue of simulation *vel non.* Upon that issue the case has been tried and decided, and it is now too late for Rexach to claim that the court below should have declined to entertain it.

II.

It is next contended that plaintiffs' proceedings are defective because

not charging the insolvency of Martinez, or that he had no other property for the satisfaction of their claims. But their pleadings do allege that this sale "includes almost the entire property of defendant," which, in connection with the considerable debts due these various plaintiffs, certainly implies inevitable injury to them, if the sale were sustained.

### III.

A vast amount of oral testimony was taken in the case, and the judge reached the conclusion that the pretended sale from Martinez to Rexach was a mere sham and simulation.

We have reviewed the evidence with great care. The fact that this was a sale *omnium bonorum* by Martinez, and entirely out of the usual course of trade; the intimate and peculiar relations which had existed between him and Rexach; the utterly improbable and absurd story by which Rexach attempts to establish his possession and custody of large amounts of money which never went into bank, but were carried on his person, or concealed in the most exposed and uncommon places; his conduct at and after a fire, in which his pretended treasures were exposed to destruction; the unbusinesslike readiness with which he professes to have lent Martinez $2000 of his hoard on a mere demand note without security; the utter carelessness exhibited by him in the matter of the sale, in which he accepted nearly $500 of accounts at a fixed value without the slightest inquiry as to their validity or solvency, and in which he bought the good will of the store without any transfer of the lease, and without any examination or inquiry as to the character and amount of the business; the many inconsistencies, contradictions and absurdities of the evidence given by the parties—these, with their own statements to third persons and many other suspicious circumstances, all combine to impress our minds with the belief that the transaction, with all its carefully arranged pretenses of reality, was nothing more than a mere simulation.

Even if we had doubts upon the subject they would not authorize us to reverse the conclusion of the learned judge *a quo* who saw and heard the witnesses.

### IV.

We concur likewise in the conclusion of the judge that Esteva and Lloveras were not real or *bona fide* transferrees of the notes presented by them. Esteva was a witness to the sale and, we are satisfied, a confederate in the fraud. He pretends to have acquired the note shortly after the sale, by paying money in cash therefor, which he had in ready notes, without the necessity of drawing on a bank.

Schlieder vs. Martinez.

Lloveras also is called on by Martinez at a late hour of the evening, and, at his request, pretends to have paid him $725 in cash for two of the notes, which, likewise, he happened to have in hand and did not need to draw a check for. He does not pretend to have made any examination of the act of sale with which the notes were identified, and seems to have been content to advance this considerable sum of money on Martinez's simple assurances, though the latter was then already in his debt.

All the circumstances are unnatural and suspicious, and we cannot reverse the conclusion of the judge a quo that the transactions were unreal and fraudulent.

### V.

Lloveras filed a separate and independent intervention, in which he claimed the ownership of a certain lot of cigars valued at $198, and of a mirror worth $50. Over this demand we have clearly no jurisdiction, and it was not considered in our opinion on the general motion to dismiss filed herein, and is not concluded thereby.

Judgment affirmed.

### ON APPLICATION FOR REHEARING.

POCHÉ, J. In our opinion on the merits of the cause, we declined jurisdiction of the claim of Lloveras to the ownership of a mirror and of a lot of cigars, included in the attachments sued out by plaintiffs, but through inadvertence we omitted to dismiss his appeal, and affirmed the judgment in its entirety. We can and we shall correct that error without granting a rehearing.

Appellants' counsel suggest that we should make a similar correction in our decree as to the claim of Esteva and the other intervention of Lloveras, but in this they are in error. As to those claims, which were for portions of the proceeds of the property attached, the test of our jurisdiction was in the amount of the fund to be distributed, without regard to the amount therein claimed. (Const., art. 80.) Hence, we investigated the merits of that branch of the controversy, and disposed of it finally.

We reaffirm our conclusions in that respect, as well as on the merits of the main action, which a second examination has proved to be supported by the evidence in the record.

It is therefore ordered that our former decree herein be amended so as to make it conform with the conclusions announced in the opinion, and in so far as it purports to affirm the judgment rendered on the intervention of Lloveras in his claim for the mirror and the lot of cigars, whose appeal in that respect is hereby dismissed; and that in all other respects our former decree remain undisturbed.

Rehearing refused.